*8 Opinion of the Court,
by Judge Mills.
Yancey, in an action of trespass for breaking his close an¿ house, and beating and wounding his slave, so that s'le was Ponfi°ed and useless for many months, recover-against Downer a verdict and judgment for five hundred and fifty dollars, from which Downer appealed anc^ eidere(l into an appeal bond, but never prosecuted the appeal, and afterwards filed this bill with injunction, praying the chancellor to grant him a new trial. ^ie cHancellor decreed a new trial, and to reverse that decree, Yancey has prosecuted this writ of error,
The grounds of equity set up by Downer, are, that at the time of the trial he was necessarily absent in Virg>n*a on indispensable business, from whence he expected to return before trial, but was unavoidably detained; that as a measure of precaution, he employed an agent afrenci to the suit, who caused all the proper witnesses to be subpoenaed, and he and the witnesses attended on the day on which the cause was set for trial, and *9 also the next day; and as there were several important causes still before his, the conclusion of his counsel 5 agent and witnesses, was, that the cause would not be tried the fourth; but that these causes were unexpectedly continued, and his cause was tried on the third day; and that owing to sickness, his agent did not get to court until after the cause was argued, and none of his witnesses were sworn and heard, and none of them appeared until after the jury retired, when one of his most important witnesses came in; that his agent spoke to his counsel about a new trial, and the counsel advised an appeal, as the most sure method of redress, and not new trial, and the appeal was prayed; that if he had a fair trial, he could show that he hacl not injured the slave of Yancey to the value of one dollar, as he had onlymoderately chastised her, and the injury which received, was by a fall, which happened by her running out of the kitchen, in a passion.
a^u^e?and a„ent improvidently PraJiaS ,ana a new trial was the appropricannotjusti’a court o chancery in bin seeing a new trial.
It is but rarely, and under peculiar circumstances, of chancery can entertain ayy jnrisdiojN”g taor't
Improprieties °f¿uer°tr\™em ™ punishment, with°ut vitiating the verdict.
In an amended bill he states, that the son and agent of Yancey, who conducted the cause for him, had siderable conversation with the jurors or some of them, after their retirement, and before they agreed on their verdict, of which neither he nor his agent was apprised, until long since the transaction took place.
Yancey, in his answer, denies, any unfairness on his part, and alleges that when the cause was reached, the counsel of Downer urged trial, and his own counsel proposed a continuance, or to lay it over until the witnesses appeared, as none of them were present, ayxl thus Downer’s counsel hoped to compel a non-suit; that against the wishes of his counsel, a jury was empannelled, and some of his witnesses then appeared, and the cause progressed without some of his witnesses, and the most important witness he had. He denies the possibility of mitigating the damages, and any knoledge of communications to the jury from- his son, and pleads and relies on the proceeding at law, and the failure to apply for a new trial to a court of law, as a bar to relief.
We could not sustain the decree of the court below, if the merits of the cause were in its favor. It directly sets aside the judgment at law, and awards a new trial totidem verbis. We cannot concede to the chancellor the power of setting aside and altering the records of a court of law. If the powers of a chancellor were sep^ *10 arated from the person of the judge of a court of law, which is done elsewhere and may be done here, we cannot tell how the chancellor would enforce such a decree—whether he would retry the cause himself, or compel the court of common law to do it. Hence this court has decided that the chancellor must, in such case, act on the person only, and not on the proceedings at common law; or, in other words, he ought to decree that unless the defendant in chancery consent in the common law court to a new trial, in a reasonable time, his hands shall be tied, and he be perpetually restrained from executing his judgment.
But we do not rest on this point only in reversing this decree; for, on the merits, it cannot be sustained. Indeed, if the fact of improper communication with the jury be excepted, the face of the complaint’s bill cannot authorise the interposition of the chancellor. The trial of torts belong not to the chancellor, and he but seldom ought to interfere with the proceedings at law in such cases. Where, by fraud or any artful contrivance of one party, or by unavoidable accident, a valid defence is kept out of sight, the chancellor may interpose. But it is not sufficient for a party applying to a court of equity for a new trial, to exhibit good grounds; he must also show, that it was out of his power, owing to some substantial cause, to make the application to the court of law in due time. Besides, it ought clearly to appear, that injustice had been done. Here the party has not shown it probable, that a different result would be produced on a second trial, even if the testimony of the witness, who alone appears to have been with him1 when he committed the trespass, and on whom he chiefly relies, be taken as conclusive. It does appear, that both his agent and counsel, had it in their power to apply for a new trial, and conversed upon it; that they were possessed of every fact in the bill, the communication with the jury excepted, then as well as now; and'that they declined it, and took another course.— By their decision, he must be bound so far as the rights of his adversary are concerned. As to his absence, he could and did act by agent; and as to the conclusion that the case would not be tried, as this was not induced by his adversary, the result of it must fall upon him; for it would be going far, to say, that the organs of the law should be bound to retry every case where parties had *11 made calculations from the state of the docket, that the cause could not be reached in a certain time, and resting on that calculation, have missed the hour of trial. Those who rest on such calculations, must generally do it at their peril, and courts of law will scarcely ever relieve them, much less the chancellor.
As to the improper communications from the son and agent of the plaintiff in error, the proof amounts simply to this: At the place of trial there was no courthouse, and the jury deliberated out of doors, and not having agreed until evening, they retired to a room prepared for them. One of the jurors, on passing the son of the plaintiff in the street, told him that his father’s nearest neighbors on the jury, were the hardest against him, or were for the lowest damages, to which the son made no reply. Another juror coining shortly afterwards, spoke to the son in nearly the same words with the first, to which the son replied, that the first juror, (naming him,) had told him all about it, or that he had heard as much from the first juror, and here the conversation ended. It cannot be pretended, that this ought to vitiate the verdict. The impropriety was all on the part of the jurors, and however imprudently they may have acted in such communications, or subjected themselves to punishment, there is no pretext for attributing any impropriety to the son of the plaintiff.
He made no other reply than to intimate to the second juror, when troubled with such repeated addresses, that he wished to hear no more. Improprieties in jurors, will frequently subject them to punishment and not affect their verdict.
The decree must, therefore, be reversed with costs, and the cause be remanded, with directions there to dissolve the injunctions with damages, and dismiss the bill with costs.