Judge Mills
delivered the Opinion of the Court.
Nancy Tyler, a person of colour, brought hel’ action of trespass, assault, battery and imprisonment, asserting her right to freedom, against Travis Finley, and on an issue made involving her freedom or slavery she succeeded. Evidence was given on both sides, conducing to establish the respective claims, and among the rest a witness introduced on the part of the plaintiff, named Ayres Witt, gave evidence in her favor. A new trial was moved for, relying on the insufficiency of all the evidence, and also on the ground of surprize by the testimony of the witness Witt. The court overruled the motion, and ori an appeal to this court the judgment was affirmed. See 1 Litt. Rep. 161.
Afterwards Finley filed this bill praying the chancellor to interfere, and grant a new trial at law.
He states that he had purchased the slave from a certain Thomas McClain in Tennessee, where they both resided at the time, and afterwards he removed with Nancy to Kentucky; that after the action at law was brought, to save trouble and expense, he rescinded his contract with McClain, and restored him the slave in Tennessee. But she ranaway, or was stolen away and came back to Kentucky, and progressed with her suit, tinder the protection of the court; that McClain applied for leave to defend, and did defend the suit, and that this bill is brought exclusively for his benefit; that Nancy claimed her freedom as her birth right, because she was born of a free woman; that on the trial evidence was examined on both sides', and before the close of the testimony the said Witt in effect established her right to freedom, and that the .jury found the plaintiff to be free on the evidence of Witt.
He states further that, since the suit was tried, he -feas discovered that tne facts sworn to by Witt are. *401 wholly untrue, and that said Witt, on the trial had committed perjury. — .That Witt swore in effect that Nancy was the daughter of Polly Tyler, a free woman, with whom ho had been once acquainted, and that ho had seen her child get an injury in the eye brow which left a scar, wlii'cli was relied on as a circumstance to identify her. — That these facts, he has no doubt, were fabricated by him in concert with Nancy, to effectuate her freedom. Me then states that ho can prove by sundry witnesses whom ho names in Washington ami Sullivan counties in Tennessee, that Folly Tyler was not the mother of Nancy, and that in truth she never was the mother of a female child, and that Nancy is the daughter of a female slave by the name of Milly, now owned by a man by the name of Williams in the State of Tennessee.
He states that he was not apprized of these fads on tiie trial of the suit at law, aiiho5 he used all tlie diligence he could to procure testimony before the trial came on; that the witnesses discovered, live between 80 and 150 miles from him, and he did not know that he could procure any such testimony in that quarter until after the term at which the trial' was had, when for the purpose of ascertaining the truth of what Witt had deposed, and of satisfying himself fully on the subject, he went to (he parts where the said witnesses lived, and where Witt placed the scene of his knowledge, and there he found the facts stated by him were positively untrue.
lie then states that Nancy was owned by several persons, before she was owned by McClain, and the immediate vendor to McClain was dead before the action at law ivas tried, and be was, therefore, unable to trace Nancy back to her nativity, in the way he lias been enabled todo since he heard the testimony of Witt, and made the discovery aforesaid, which that evidence led to. He makes the record at law a part of his bill, and alleges that the, bill of exceptions therein contains the whole evidence, and that Use testimony of Witt therein contain*,d, was materia! to the point in issue, and must have had great weight with the jury, and that if he could have had (lie benefit of the evidence of the persons named as *402 witnesses newly discovered, the finding of tbe jury would, in ali probability, have'been different.
Demurrer susflustainod and bill dismissed.
Quera — Whether equity "will in any case grant a new trial where freedom has been gained aliaw. If it v,’ill, the case must be clear and ftrong.
■Where the ceshd que trust was the better informed of the facts, and did himself man-ace ¡be defence in tbe action at law, the bill for a new trial, on on tbe .ground of surprise & tbe subsequent disco very of evidence, must shew hiiy not íhc trasloo’?, ¡previous want
Mo further alleges lliát he has discovered since the trial at law that Witt, had confessed to a witness named by him, that all he knew on the subject he had learned from Nan by herself.
To this bill tbe counsel for Nancy demurred, and the court sustained tbe demurrer, and dismissed the bill, from .which decree he has appealed. .
It may be a matter worthy of some consideration, as ingeniously contended iti the argument of this cause, whether the chancellor ought in any ease to graht a new. trial at law for the purpose of taking aiVay a right to freedom gained at law. For as the chancellor will only interfere to fake from a party a legal advantage., which in 'conscience he cannot retain, it may be doubted whether a right to freedom can ever be a claim of that character. It inay at all events be assumed that the case which would warrant such interference ought to be strongand clear..
But without expressing any decisive opinion on this point, there is no necessity of resorting to it in this case, for the purpose of deciding against the right of the appellant. For other well settled principles, applicable to cases where the chancellor will interfebc, are conclusive against the relief sought in this bill.
The bill is not as free from evasion as it ought to be to warrant this decree. McClain is the person really concerned in interest, and the person who defended the suit at law. who liar! an earlier acquaintance with the appellee, and a better opportunity of knowing her nativity. Yet he is only the cestui que trust of this suit, and not a legal party,. He has not sworn to the bill, nor hast he or his trustee given us his knowledge or his ignorance of the nativity of Nancy, or the exertions he made in defending the suit at law, or the discoveries he made of testimony. For any thing that appears lie knew of Nancy’s birth or how to trace it, or discovered all tiiese witnesses, but thought it not proper to use them as the defence was given up to him. If a bilí by a naked trustee, under such circumstances, should be sustained, it would furnish an easy expedient to *403 procure a new trial, on evidence known long before the trial, but kept: back as unnecessary, or through indolence in numerous cases.
ofknowledge, his surprise & subsequent discovery; & the affidavit must be made by him.
Negative pregnant in the bjfhgivea its weight againsl complainant.
Where the party-know , the disputed fact and also his adversary witness, and did adduce evidence both as to th© principal question and against the credit of the adversary witness, and afterwans moved for a new trial, the chancellor «'ill not grant it on the ground of the discovery of additional witnesses.
To sustain a.. bill for a review or new trial at law, the evit deuce di»cov-i erecl, if it applies to po-nts before an issue must bo of a perma nent nature and uo-'t-rinj. character.
Add to this, the bill is drawn with still greater appearance of art. For it not only keeps out of sight the knowledge and discoveries of McClain, biit alleges that the plaintiff till after the trial knew of no witnesses in that quarter to prove the same facts, without asserting that he knew of none elsewhere,
Again: The claim of Nancy was founded on birthright, and lier claim in that respect was known to be in issue, Seaj’ching Hie place and circumstances of her birth, and who was her mother was the very inquiry suggested by the suit and its issue, and therefore imposed upon the defendant due diligence. It-was known before the trial that WHt would be a witness, and something of 'the nature of his testimony, and the defendant was then prepared to impeach his testimony, and did introduce evidence for-that purpose while the opposite party corroborated it; so that the attention of the parties had bce,n particularly directed to that matter, and the motion for a new trial was predicated in part on the same enquiry. Consequently every fact and point which the bill offers to prove, was completely in issue at the trial at law, and evidence pro and con actually adduced by the parties. This application then is solely a struggle for leave to introduce more testimony on the same points, since discovered, and that consisting in the swearing of witnesses only, of a char.T acter as uncertain, as erring, and as dangerous as the testimony, which it is intended to impeach, and-as liable tobe discredited in its turn.
Tlie rule is well settled that Co sustain a hill for a review or a new trial at law, the evidence, if it applies to points formerly in issue must he of such a permanent nature and unerring character, as to preponderate greatly, or have a decisive influence upon the evidence which is to be overturned by it. See Respass vs. McClanahan, Hard. 315. Bales vs. Shackleford, 1 Litt. Rep. 35. Yancey vs. Downer, 5 Litt. Rep. 10. It is uncertain whether the result would be different if the complainant was ai *404 lowed a new trial. Put the best face, upon the case# it is one where success might be hopeful, and worth the experiment if allowed, and such experiments ought be indulged by (ho chancellor.
Triplett for appellant; Jtlayss fur appellee.
The derr.ee mast be affirmed with costs.