Morss *v.* Elmendorf.

---

## MORSS *vs.* ELMENDORF.

Where by the mistake of both parties, as to the existence of a gore of land, one contracted to sell and convey, and the other to purchase and pay for a supposed gore of land which had in fact no actual existence, the vendor cannot file a bill in equity, for the specific performance of the contract, or for a compensation in damages by the vendor, for not making the conveyance when requested to do so.

If the vendor contracts to sell land, and the title to a part of it fails, the vendee may claim a specific performance of the contract, as to that part of the land, to which the vendor can give him a title, and for a compensation in damages as to the part of the land to which the title fails.

But where a vendor, by mistake, supposes he has title to land, and contracts to sell and convey the same, he cannot be compelled to convey an adjoining lot, to which he has title.

Where the vendor never had title to the land contracted to be sold, or where he has conveyed the same subsequent to the making of the contract, so that he has not the power specifically to perform his contract, and that fact is known to the vendee, the latter cannot file a bill in equity, for the mere purpose of obtaining a compensation in damages for the non-performance of the contract by the vendor; but he must resort to his remedy at law, for that purpose.

But where the defendant deprives himself of the power to perform his contract specifically, during the pendency of a suit against him to compel such performance, the court will retain the suit; and will award to the complainant a compensation in damages, for the non-performance of the contract by the defendant.

It seems also, that the court will retain the suit and award a compensation in damages, for the non-performance of the contract, where the defendant was unable to perform the same, at the time of the filing of the bill for that purpose, where the complainant was ignorant of that fact, and filed his bill for a specific performance in good faith, supposing that the defendant was able to perform the contract specifically.

The court of chancery does not entertain jurisdiction of a suit, where the sole object of the complainant's bill is to obtain a compensation in damages for the breach of a contract, except where the contract is of equitable cognizance merely.

Nor can the complainant entitle himself to a decree for a compensation in damages merely, by concealing the fact, in his bill, that the defendant is not able to perform his contract specifically; where such fact is known to the complainant, at the time of the filing of such bill.

THIS was an appeal from a decree of the late assistant vice chancellor of the first circuit. The bill was filed for the specific performance of a contract under the following circumstances: The defendant, Lucus Elmendorf, and Dutcher & Hogeboom, all supposing that there was a gore of land, containing about 183 acres, between lot No. 11 of the subdivisions of great lot No. 49, in the Hardenburgh patent, and the south line of great lot No. 50, in the same patent, and that Elmendorf was the owner thereof, an agreement was entered into between them, in the following words: "I do by these presents, agree to and with G. Dutcher and C. Hogeboom, to lease to them the gore lot, of about 183 acres, situate in the town of Prattsville, Greene county, lying between lot No. 11 in great lot No. 49, and the south line of great lot No. 50, in the Hardenburgh patent; by a durable lease to them, either jointly, or to each a separate lease, which shall contain a

reservation on the whole lot of 32 bushels of good, merchanta-
ble winter wheat, after three years rent free; the lease or leases
to contain the usual reservations and covenants of my durable
leases on my Strasburgh tract, in Schoharie county.  They have
my permission immediately to move on to the same, provided
they shall take and execute leases within three years, rent free,
from this date.    March 1, 1839.".  Shortly afterwards, Dutcher
and Hogeboom assigned all their interest in the contract to G. B.
Morss, the complainant, upon condition that they should have
all the bark upon the land at the market price, to be peeled, and
drawn and delivered by them to Morss, and to be paid for by
him in the manner in the assignment specified.  The instru-
ment called an assignment then concluded in these words: " If
this memorandum is not sufficiently strong *to hold the bark,* we
are to give the said Morss another one as soon as requested."
Soon afterwards, the complainant ascertained that it was doubt-
ful whether Elmendorf had title to any such land as was refer-
red to in the agreement; and neither he, nor Dutcher and Hoge-
boom, ever went into possession of the supposed gore, under the
contract.    In 1840, Elmendorf became satisfied that there was no
such gore as the parties at the time of entering into the agree-
ment, supposed existed; and he refused to execute a lease to
Morss, who demanded the execution of the same to him, under
such agreement.    The complainant thereupon filed his bill in
this cause, for a specific performance of the contract.  The de-
fendant, by his answer, stated that there was no such gore of
land as, by the contract for a lease, was supposed to exist, and
that there was no land between lot No. 11, of the subdivision of
great lot No. 49 and the line of great lot No. 50.    The testimo-
ny of a surveyor, who was well acquainted with the corners and
locations of the several lots, also showed that there was no such
gore; but that great lot No. 50, and lot No. 11 of the subdivis-
ions of great lot No. 49, were bounded upon one and the same
line, and upon each other.    The cause was heard upon plead-
ing and proofs, and the assistant vice chancellor decreed that
the complainant was entitled to relief against the defendant, in
this court.    And he further decreed that it be referred to a mas-

ter to ascertain the location and boundaries of what was designated as the gore lot, and to make a map thereof if he should be able to locate the same ; and if he could not locate the same, or should find that the supposed gore was within the bounds of great lot No. 50, or of some other lot than great lot No. 49, then to ascertain whether the defendant, at the date of the contract, was the owner of lot No. 11 of the subdivision of great lot No. 49, or of any and what part thereof, and if so, whether he was still the owner, or when he ceased to be such owner ; and if the defendant was such owner, the master was directed to set off a strip of lot No. 11, on the westerly side thereof, equal in contents and value to the gore of 183 acres, as it was at the date of the contract. And the defendant was directed to execute to the complainant a perpetual lease thereof, according to the terms of the contract. It was further decreed, in case the master should find that the defendant did not then own lot No. 11, or any part thereof, and was not the owner thereof at the date of the contract, that such master proceed to assess the damages which should be allowed and paid to the complainant by the defendant, for the non-performance of the contract. From this decree the defendant appealed to the chancellor.

*M. McDonald*, for the appellant. The contract set forth in the complainant's bill was obtained from the defendant by the false and fraudulent representations of Dutcher and Hogeboom. The defendant was deceived, by such representations, as to the existence of the gore of land, which he agreed by the contract to convey. There was no such gore of land. And both Dutcher and Hogeboom had been informed and knew that there was no such gore, before they obtained the contract from the defendant. And the complainant also knew it before he obtained an assignment of the contract from Dutcher and Hogeboom. They formed a conspiracy to extort from the defendant a heavy amount of damages for the non-performance of this contract. The contract was a personal undertaking with Dutcher and Hogeboom, and their interest in it was not assignable. The defendant had the right to select his own lessees. He had the right to insist that

Morss *v.* Elmendorf.

Dutcher and Hogeboom should be bound to him for the rent. The pecuniary condition of the complainant is not shown. He may be insolvent. The case of *Crosby* v. *Tooke*, (1 *Mylne & Keene*, 434,) cited by the assistant vice chancellor, is not applicable. There the contracting party was insolvent, and his assignee was solvent. Dutcher and Hogeboom did not, on the 3d of April, 1839, assign to the complainant the right to take the lease in his name. They only assigned to him the bark on the land. A sale of timber conveys no interest in the land. (4 *Kent's Com.* 450, *note C.* 1 *Ld. Raym.* 182. 11 *East's Rep.* 362.) Dutcher and Hogeboom conveyed to the complainant no authority to receive the lease, until the 8th of July, 1840. The demands of the lease, from the defendant, by Dutcher and Hogeboom, and by the complainant, were insufficient. There was no offer to execute a counterpart by them. A purchaser must on his part, perform or offer to perform a contract for the purchase of land; and he must demand a conveyance from the vendor, where the covenants are mutual and dependant, before he can maintain an action against the vendor for non-performance. (*Gazely* v. *Price*, 16 *John.* 267. *Robb* v. *Montgomery*, 20 *Id.* 15. *Fuller* v. *Williams*, 7 *Cowen*, 53. *Fuller* v. *Hubbard*, 6 *Id.* 13. 1 *Salk.* 171. *Topping* v. *Root*, 5 *Cowen*, 404.) The decree of the assistant vice chancellor is erroneous in directing the defendant to convey to the complainant a different piece of land from the one described in the contract. The evidence in relation to the value of the land and bark should have been suppressed, as the evidence did not relate to the land described in the contract, and was not material and relevant to the question of damages. The measure of the damages which the complainant would be entitled to recover, if any, is the amount of rents actually paid the defendant under the contract, with interest. (*Kelly* v. *Dutch Church, &c.* 2 *Hill*, 106. 10 *Wend.* 150. 2 *Id.* 405. 3 *Cowen*, 115. 21 *Wend.* 343.) But no rents have been paid, and no consideration was paid for the contract. The contract was a mere voluntary agreement. And a specific performance will not be decreed of such an agreement. (4 *Paige*, 305.) If the complainant has any remedy he has a perfect remedy at law. As

the fraud charged in the bill is disproved, the objection of the want of jurisdiction may be taken at the hearing. The ground upon which a court of equity enforces specific performance is fraud; fraud of the defendant in making the contract, or in resisting its complete execution after a part performance. A part performance generally works a fraud unless the contract is carried into complete execution. The court will also enforce a specific performance where the complainant's remedy at law is doubtful, or imperfect. But a court of equity never interferes where the legal remedy is adequate. (8 *Ves.* 163.) The complainant must come with clean hands. (18 *Ves.* 11.) The defendant may resist a specific performance by showing that there was an omission or mistake; (3 *Atk.* 388; 7 *Ves.* 211; 1 *Ves. & B.* 512; 13 *Ves.* 25; 1 *Mad. Rep.* 11; 2 *Ball & B.* 33;) or that the agreement is unconscientious; (1 *Bro. C. C.* 555;) or unreasonable; (1 *Id.* 556;) or by showing fraud or surprise; (*Greene* v. *Greene,* 2 *Ves.* 307; 1 *Mad. Rep.* 11; 2 *Ball & B.* 287;) or misrepresentation, whether wilful or not. (1 *Ves. & B.* 356. 6 *Ves.* 328. 2 *Ball & B.* 33. 1 *Mad. Rep.* 81. 1 *Camp.* 337.)

The covenants in the contract were broken by the defendant *immediately upon its execution, in consequence of there being no* such land as described in the contract, for which a lease could be given. And the complainant cannot maintain a suit for a breach which occurred previous to the assignment to him. (2 *John. Rep.* 7. 14 *Id.* 39. 4 *Id.* 72.)

The defendant, in this case, executed the contract under a mistake of fact; a mistake occasioned by the false and fraudulent representations of Dutcher and Hogeboom, for whose benefit it was made. And equity will not, under the circumstances, compel the defendant to convey to the complainant a different piece of land—or to pay him damages for the breach of the agreement. (18 *Wend.* 412. 6 *Paige,* 189.)

*A. J. Parker,* for the respondent. The complainant is entitled to a specific performance and to a lease of the land known as the "gore lot," containing about 183 acres of land. The original

Morss v. Elmendorf.

contract was mutually obligatory, and the lease was to contain mutual covenants. (*German* v. *Machin*, 6 *Paige*, 288.) The complainant, as assignee, enjoys all the rights of the assignor. It is no defence to a bill filed against a landlord for a specific performance of an agreement for a farming lease, by a person to whom the benefit of the agreement has been assigned, that the party with whom the landlord had contracted had become insolvent; provided the assignee is solvent and in a condition to enter into the usual covenants. And there is no evidence that the contract was entered into upon considerations personal to the assignor. (*Crosbie* v. *Tooke*, 1 *Mylne & Keene*, 431. 6 *Paige*, 288. *Morgan* v. *Rhodes*, 1 *Mylne & Keene*, 435. *Murray* v. *Gouverneur*, 2 *John. Cas.* 438.) There is no proof that the defendant does not own the lot. He asserted in the contract that he did, and in his subsequent letters. The existence of the lot in question called the gore lot, whether properly or not, is recognized by all the witnesses. The lease was three times demanded; and at the time of the last demand a lease was tendered, to be executed, and an offer made to execute it on the part of the complainant. This was unnecessary. One demand was enough. And the defendant should then have drawn and executed the lease. The vendor must draw and execute the deed, and have it ready for delivery when required. (*Wells* v. *Smith*, 2 *Edw. Rep.* 78; *S. C.* 7 *Paige*, 29. *Tapp* v. *Beverly*, 1 *Leigh* 80.) Besides, it is the settled and universal practice in this state for the landlord to prepare all leases. Where an agreement to make a lease is entered into upon certain terms, the party to whom the lease is to be made cannot enforce a specific performance, unless he performs or offers to perform his part of the agreement, or shows that he is willing or able to do so. (*Harris* v. *Banks*, 1 *Rand.* 408.) An obligor is not permitted to avail himself of any uncertainty in the boundaries of the land which he contracts to convey, to avoid a specific performance; and the court will decree a conveyance according to the best lights which the circumstances afford. (*Kennedy* v. *Davis*, 2 *Bibb*, 321, 344.) He who sells property on a description given by himself is bound to make good that description; and

if it be untrue in a material part, although the variance may be occasioned by a mistake, he will still be liable for that variance. (*McFerron* v. *Taylor*, 3 *Cranch*, 270.) But if it is out of the power of the defendant to perform specifically, by reason of his not owning the land, the bill should be retained and an equivalent in damages awarded, to be assessed on reference to a master, or by a jury upon an issue of *quantum damnificatus*. ( *Woodcock* v. *Bennet*, 1 *Cowen*, 713. *Philips* v. *Thompson*, 1 *John. Ch. Rep.* 131, 150. 1 *Ves. Jun.* 329. 1 *John. Ch.* 274. 14 *John. Rep.* 15, 45. *Greenaway* v. *Adams*, 12 *Vesey*, 395. 1 *Fonb.* 38, *n. y*, 165, *n. b.*) Here it was proper for the complainant to come into the court of chancery to ascertain the defendant's title and obtain a specific performance, if it was in the defendant's power to perform; and if it is not in his power, we are clearly entitled to compensation in damages. Chief Justice Spencer says, " no man should be permitted to say to another that he has led him into an error by holding out false appearances; but that the party deceived must nevertheless bear the loss resulting from that error." ( *Waters* v. *Travis*, 9 *John.* 469.) A vendee may compel a specific performance in cases in which the vendor could not. (9 *John.* 450.) The defendant cannot object, on the hearing, that the complainant has a remedy at law, where he has not set it up in his answer. (*Bradley* v. *Root*, 5 *Paige*, 636.) A defendant cannot avail himself of a defence which appears in his evidence only, and is not set up in his answer. (1 *Russ. & Myl.* 527. *Stanley* v. *Robinson*, 1 *Russ. & Myl. Ch. Rep.* 527.) In *Kempshall* v. *Stone*, (5 *John. Ch. Rep.* 193,) the defendant set up in his answer that the plaintiff's remedy was at law, and claimed the same benefit of that objection as if he had demurred ; and he therefore had the benefit of it on the hearing. The decision in the case last cited does not conflict in any respect with the claim here. There the complainant had been repeatedly called on to pay the balance and to take the deed, and the defendant had given him notice that he intended to sell and convey to another person if no objection was made. The case of *Kempshall* v. *Stone* was decided by Kent, Chancellor, in 1821, and the case of *Woodcock* v. *Bennett*, by the court of

errors, in 1833. In the case of *Kempshall* v. *Stone*, (5 *John. Ch.* 193,) the defendant had conveyed before the bill was filed, and that fact was known to the complainant; and such knowledge was held material. Here the defendant had made no conveyance to any other person before the commencement of the suit. And the complainant could not know that the defendant could not perform specifically. The fact that some one had said that the defendant did not own the land, even if known to the complainant, could make no difference; as the defendant affirmed, as late as July, 1840, that he owned the land and would convey. But if the defendant afterwards told the complainant that he had no title, he cannot avail himself of any such statement here. The complainant's rights and remedies cannot be controlled by what the defendant chooses to say. The fact that a suit is pending, in which lands are held adversely to the vendor, is not a sufficient ground for reporting that a good title cannot be made. (*Osbaldistin* v. *Askew*, 1 *Russ.* 160.) Admitting that in order to obtain merely a repayment of the purchase money, the complainant has a remedy in a court of law; he has nevertheless a right to file his bill to compel the defendant to complete his contract, or to have it rescinded and the damages paid. In *Pierce* v. *Nichols*, (1 *Paige*, 244, 46,) such relief was granted, in a similar case, under the general prayer for relief. The complainant is entitled to costs. (*Russell* v. *Livingston*, 4 *John. Ch. Rep.* 149. *Brigham* v. *Brigham*, 1 *Ves.* 126.) But if the bill is dismissed on the ground that there is a remedy at law, costs will not be awarded to the defendant. (*Kempshall* v. *Stone*, 5 *John. Ch. Rep.* 194.)

THE CHANCELLOR. There is no principle upon which this decree or any part thereof can be sustained. The question whether there was in fact any gore, between lot No. 20 of the subdivisions of great lot No. 49 and the line of great lot No. 50, was distinctly put in issue by the defendant's answer, and by the replication filed to the same; so that each party had a full opportunity to take testimony to that point. And the evidence of Keirstead, the surveyor, and the map of the location of the

lots, produced by him, show conclusively that no such gore ever existed except in the imaginations of the inhabitants of the neighborhood, and in that of the defendant who resided at some considerable distance from the supposed premises intended to be leased. It, therefore, was useless and improper to direct a reference, and subject the parties to further expense, when the complainant had not attempted to controvert this fact, stated in the defendant's answer, by any testimony whatever in opposition to the positive evidence of Keirstead; who established the fact beyond all doubt. Another surveyor who surveyed the supposed gore for the complainant, and who was examined by him as a witness, does not pretend to dispute the fact sworn to by Keirstead, that the supposed gore is in fact within the bounds of great lot No. 50, as actually run out and located upon the land by Tappan and Cockburn; the commissioners who made the partition of the patent more than fifty years since. It must, therefore, be considered as settled, for all the purposes of this suit, that all the parties to the contract of the first of March, 1839, were under a mistake in supposing that there was any such gore as is described in that contract. It is true the letters of the defendant, written soon after the contract was made, and when he supposed great lots No. 20 and No. 49 cornered together, state that there was a gore. But the answer and the evidence shows that the defendant was then laboring under a mistake. And as the lease, if executed in conformity with that contract, and purporting to convey land which has in fact no existence, would have been a mere nullity, there was nothing of which a specific performance could be decreed. I am also satisfied, from the evidence, that the complainant must have been aware of the fact that there was no such gore of land, at the time of filing this bill.

The assistant vice chancellor has indeed attempted to make a new contract for the parties, and to decree a specific performance thereof, provided the defendant owns any land in lot No. 11. That, however, is land which neither of the parties supposed was to be included in the lease. For by the terms of the contract the whole of great lot No. 50, and the whole of lot No.

11 of the subdivisions of great lot No. 49, are necessarily excluded from the operation of such contract. (*See Jackson* v. *Woodruff*, 1 *Cowen's Rep.* 276.) Where the vendor has contracted to convey a tract of land the title to a part of which fails, the vendee may claim a specific performance of the contract as to the residue of the land, with a compensation in damages in relation to the part as to which the vendor is unable to give a good title. At least courts of equity have in some instances acted upon that principle. But I am not aware of any case in which the vendor has been decreed to convey an entirely different piece of land from that which the parties had in contemplation at the time of making their contract, and which is not in fact embraced in such contract. Here it is perfectly evident that neither party, at the time of making this contract, expected that Elmendorf was to lease to Dutcher and Hogeboom any part of lot No. 11. That part of the decree which directs the master to set off to the complainant 183 acres of lot No. 11, to be leased to him by Elmendorf, provided it shall be found by the master that the defendant is the owner of lot No. 11, is therefore clearly erroneous.

Nor do I think this is a proper case for the court to decree a compensation in damages to the complainant; even if this court has jurisdiction to entertain a suit for damages merely, where the defendant never had the title to land which he has positively agreed to convey, or where he has parted with his title before the commencement of the suit, and that fact is known to the complainant at the time of filing of his bill. Here the evidence shows that the parties were acting under a mutual mistake, as to the actual existence of the gore between lots No. 20 and 50, at the time the contract was made. If the contract has any legal force or effect whatever, which is at least doubtful, there is no reason why Dutcher and Hogeboom, or the complainant who claims the benefit of the contract under them, should not be left to their action at law to recover damages for the non-performance of the contract, if any damages have in fact been sustained. Nothing had been done by them, or either of them, under the contract, and nothing had been paid. Nor was there any mutuality in it.

For the defendant could not have sustained any suit or action, against Dutcher and Hogeboom, if they had refused to take a lease of the supposed gore of land ; which, in fact, had no existence. The most that can be said in this case is, that Dutcher and Hogeboom have lost the speculation which they supposed they were making when they entered into the contract of March, 1839. The means of ascertaining whether the supposed gore had any existence was equally accessible to both parties, as the lines of the lots were run out and marked upon the land. And the defendant being misled by the reports in the neighborhood of the existence of a gore, when there was no such gore, no fault is attributable to him. In such a case, the proper course is to leave the parties to their legal remedies, if they have any.

It is also perfectly evident in this case, that the complainant, at the time he filed his bill, was aware that the supposed gore had no actual existence, and that no specific performance of the agreement could be obtained in this court. And, in a case of that kind, Chancellor Kent correctly decided that this court ought not to entertain the suit merely for the assessment of damages. (*Hatch* v. *Cobb,* 4 *John. Ch. Rep.* 559. *Kempshall* v. *Stone,* 5 *Id.* 193.) But where the defendant deprives himself of the power to perform the contract specifically, during the pendency of a suit to compel such performance, this court may very properly retain the suit, and award to the complainant a compensation in damages; to prevent a multiplicity of suits. And I am not prepared to say that such a decree might not be proper, where the defendant had deprived himself of the power to perform the contract prior to the filing of the bill, but without the knowledge of the complainant; or even where he never had the power to perform, if the complainant had filed his bill in good faith, supposing at the time he instituted his suit here that a specific performance of the contract could be obtained under the decree of this court. But this court does not entertain jurisdiction where the sole object of the bill is to obtain a compensation in damages for the breach of a contract, except where the contract is of equitable cognizance merely. Nor can the complainant entitle himself to the interference of this court, to

give him a compensation in damages for the non-performance of a contract, by neglecting to state, in his bill, that the defendant is unable to perform the contract specifically; where that fact is known to him at the time of filing his bill in this court. For if the facts which were then known to him had been fully stated in his bill, the defendant might have demurred, upon the ground that the complainant's remedy, if any he had, was at law and not in equity. Or he might have raised that objection in his answer. In this case, therefore, the complainant's bill cannot be retained, for the purpose of obtaining a compensation in damages merely, when he knew that he could expect nothing more than such a compensation in damages at the time of filing his bill. And the complainant having made a case, by his bill, apparently entitling him to a specific performance, he cannot now insist that the defendant has waived the objection, that the remedy of the complainant was at law; because he did not demur to the bill, or state that objection in his answer.

The decree appealed from is erroneous, and must be reversed. And the complainant's bill must be dismissed, with costs in the court below; but without prejudice to the complainant's remedy at law, upon the contract, if he has any such remedy there. The defendant having died since this cause was submitted upon the appeal, the decree to be entered upon this decision must be entered nunc pro tunc, as of the time of such submission.