## SUPREME COURT.

### EDMUND J. GENET agt. HOWLAND & ASPINWALL.

Where on a pledge of *stock*, there is no agreement in reference to *the manner of the sale*, the pledgee cannot sell the stock without giving the pledgor notice of the *time and place of sale;* and in such case the sale must be *public* at the time and place mentioned in the notice. But when the parties agree to have the pledge sold at public or private sale without notice, the pledgor cannot insist that he should have notice.

Where the pledgee, by the terms of the stock note, had authority to sell the stock on the non-performance of the promise to pay on demand, either at public or private sale, and without notice, left a memorandum in the office of the pledgor, the latter being absent, in these words: "If you cannot give us $4,500, we will be obliged to use the 100 shares P. M. S. Ship Co.," without date or signature: *held, no demand* of payment of the stock note which would authorise a sale of the stock.

Where notice to *redeem* the stock pledged by payment of the amount loaned is sufficient, and will operate to the same extent as a regular demand of payment of the note, the old common law rule of notice, with a *reasonable time* within which to redeem, must be resorted to. That is, the creditor is required to give a notice to the debtor to redeem the pledge, and allow a reasonable time within which to provide for such redemption.

A right of action for the taking and conversion of personal property upon a pledge, is *assignable*, and the assignee may sue and recover in his own name, upon a tender of the debt, and a demand made by him after the assignment, although the conversion was before the assignment.

Where the plaintiff in his complaint, unites with his claim for damages for the

improper sale of a pledge, a cause of action for the *redemption of the pledge,* and the facts disclosed do not entitle him to the equitable relief—the redemption of the pledge—the court will order the action for the tort in improperly disposing of the pledge to be tried by a jury.

*New York Special Term, February,* 1866.

THE facts in this case as proved on the trial, are not dependent on any contradictory testimony, and may be easily stated. George C. Genet was the holder of 100 shares of Pacific Mail Steamship Company stock, and applied to the defendants to loan him thereon $6,500, which they agreed to do. He gave his note for that amount, with interest at seven per cent, and pledged his stock upon the terms stated in the note, namely : " With authority to sell the same at the brokers' board, or at public or private sale or otherwise, at their option, on the non-performance of the promise to pay," and without notice. This note was dated August 1, 1857. The stock was transferred to the defendants.

This loan remained as originally made until October 1, 1857, when the defendants notified Genet by letter that they requested payment of the loan, and expected its payment on the next day. Genet arranged to obtain the money for the purpose of paying the note, at a high rate of interest, but on a subsequent interview the defendants agreed to let the loan stand as it did, subject to call. At the time, one of the defendants informed Genet he did not think they would call for it under thirty days, but refused to be bound not to do so.

On the 9th or 10th of October, 1857, Mr. Aspinwall went to Genet's office and found no one there. The office was open, and he wrote a memorandum which he left on the desk, as follows : " If you cannot give us $4,500, we will be obliged to use the 100 shares P. M. S. Ship Co." This paper had no date or signature. Genet received it on the morning of the 10th of October. He went then to the office of the defendants. He there saw Aspinwall, who

asked if he had received a note he left at his office. Genet showed it to him. Aspinwall told him that the loan must be paid within half an hour or they would sell the stock. This was shortly before the meeting of the board of brokers. Aspinwall told him he had better see about getting the money. To which Genet replied, there was not time enough to go to his office and return. There is some difference between Genet and Aspinwall as to what passed at the interview, but there is no doubt that Genet left under the demand of payment made by Aspinwall, and did not return for that purpose, or make any effort so to do. Genet says, when he left he did not believe they would sell the stock.

The defendants sold the stock on that day, one-half payable on the 10th, and one-half payable on Monday, 12th October, at fifty per cent, and this left Genet indebted to the defendants. In January, 1858, defendants sent Genet an account of the transaction, showing a balance due from him to them of $1,625.09. In the fall of 1858, G. Howland asked Genet for payment of balance; to which Genet replied that he did not think they would insist on payment of that balance after what had taken place.

George C. Genet on 1st July, 1858, assigned to the plaintiff the 100 shares of stock, subject to the payment of the amount loaned and interest. The words used in the assignment are: "All my right, title and interest of, in and to the said shares of stock." On 20th December, 1858, the plaintiff caused a check certified for $7,138.26, to be tendered to defendants, and the demand to be made for the stock. To which Mr. Howland replied, Mr. Genet knows that the stock has been sold. He also said, they would get the stock for him if he wished, on payment of the difference between the amount at which the stock was sold and the then value. Another demand was made the same day, which was refused.

Genet agt. Howland.

E. P. Cowles *and* E. W. Stoughton, *for plaintiff.*
Wm. M. Evarts, *for defendants.*

Ingraham, J. The facts in this case are so free from difficulty, that the only questions calling for much consideration are the rules of law as applicable to them. The questions raised by the parties on the trial are novel, and yet are of frequent occurrence in the business of brokers. There can be no doubt that the defendants, under the stock note given to them, had authority after default had been made by George C. Genet in the payment of his note, to sell the stock either at public or private sale, and without notice to Genet. This was the express provision of the contract, as contained in the stock note given by Genet. Excluding the authority contained in that note, the defendants could not have sold the stock without notice of the time and place of sale; and in such case the sale must be public, at the time and place mentioned in the notice. But when the parties agree to have the pledge sold at public or private sale, without notice, the party pledging the property cannot insist that he should have any notice. This was so held in *Milliken* agt. *Dehon* (27 *N. Y. Rep. p.* 364).

No question, therefore, can arise here as to the mode of sale or want of notice, and if the proper demand of payment was made, and the note had become payable so as to warrant the sale of the pledge, no objection to the mode of the sale or the disposition of the property, can be sustained. In the case last cited, the terms of the contract were: If a decline in the value of the property took place, and the plaintiff failed when demanded, to deposit in cash sufficient to cover such decline, the pledgee might sell. The court in that case, by Wright, J., says: The only question was one of fact, viz: whether the plaintiff had made default in keeping up the margin at the time of the sale.

In the present case no demand to make the deposit to cover a decline in the stock was necessary, because it was no part of the contract, and the only question here is whether the defendants made such a demand of payment of the note as to warrant the sale of the stock at the time it was sold. The note was not payable until after a demand, and two questions will arise : first, whether there ever was a demand of payment of the note ; and secondly, if there was, were the defendants bound to give any time for payment after the demand, before they could proceed to sell the stock pledged.

It is not at all clear that Mr. Aspinwall ever demanded payment of the note. The first demand of payment, even if sufficient, was waived by the subsequent agreement to let the note remain, and the loan to be continued. According to Mr. Aspinwall's evidence, the loan was to remain subject to call, and to stand as it did previously. The notice left at Genet's office was no demand of payment of the note. That paper was without signature, and the purport of it was, that if Genet could not pay $4,500, the defendants would use the stock. It neither demanded full payment of the note, nor did it give the pledgor notice of any intent to sell. He might well have understood it as meaning that if Genet could not make a partial payment, they would raise it elsewhere on the stock ; whether as a loan or on the sale of it, does not appear. This notice in no way made the note payable, and until that was done, they had no authority to sell the stock. The only evidence tending to make out a demand was the subsequent interview at the defendants' office. Aspinwall then stated that the loan must be paid, or they should sell the stock. Genet replied, it was of no use to look around then, he could not get the money ; complaining of the shortness of the time and the tightness of the money market. According to Genet's statement, in answer to the question what he was going to do, he said he could do nothing in that

time ; and when told to go and see what he could do and return, he went away and did nothing further, believing, as he says, that they would not sell the stock. The effect of this was a notice to redeem the stock, and as such may probably be considered as equivalent to a demand of payment of the note, if the notice was properly given.

Ordinarily, payment of a note can only be demanded by presenting it to the maker and requesting him to pay it, and if this was necessary to make the sale of the stock legal, then it is clear that the defendants have never placed themselves in a position to make the sale legally. The note was never presented to Genet, and payment of the note as such, was never demanded. But it is said that the notice given to Genet that he must pay up the loan, was equivalent to a demand, and, therefore, the want of a demand of payment of the note became immaterial. If this is to be considered as a notice to redeem the property pledged to avoid a sale, it is clearly defective, as not giving a reasonable time within which to make such payment. It may be conceded that a notice to redeem the stock pledged by payment of the amount loaned would be sufficient, and would operate to the same extent as a regular demand of payment of the note ; but when that course is resorted to, the rule which requires a reasonable time to redeem must be adopted. The creditor cannot, while the debt is not due, sell the pledge without resorting to the old common law rule of notice, with a reasonable time within which to make payment, because the contract does not apply to such a case. That dispenses with notice of sale only when a proper demand has been made, and if he can sell without that demand it can only be by following the common law rule, without regard to the other provisions of the contract. For such a purpose the common law rule would not be modified by the contract, but the creditor would be required to give a notice to the debtor to redeem the pledge, and allow a reasonable time within

which to provide for such redemption. It is not pretended that any such notice was given, but the defendants rely on the demand and authority to sell, as giving them power to sell the stock in the mode adopted.

It is urged that Genet gave his assent to the sale at the time the demand was made, but I do not consider any such fact as made out by the evidence. He certainly objected to the sale, and when told he must make the payment, expressed his inability to do so within the time proposed. His remark that he saw no other course but to sell, must be taken in connection with the fact that payment was demanded immediately, and the knowledge of his inability to comply on so short a notice. His answer was nothing more than if you will sell on so short a notice, I can do nothing in the way of payment to prevent it. I do not think this can be considered a consent to sell, if the defendants had not done what the law required to authorise the sale.

An objection was taken on the trial to the sufficiency of the assignment, on the ground that the conversion had taken place prior to its execution, and as it only transferred the stock and Genet's interest therein, the assignee could not maintain an action for the tort which had been committed previously. The cases of *Gardner* agt. *Adams* (12 *Wend.* 297), *Hall* agt. *Robinson* (2 *Comst.* 293), and *McKee* agt. *Judd* (2 *Kern.* 622), are relied upon as authority to sustain the doctrine that a right of action for a tort to personal property is not assignable.

In the first two cases the question arose before the Code, and the inquiry seems to have been whether the right of action in such a case was assignable, so as to enable the assignee to bring an action in his own name for the damages. This may have been the rule then, but the right to sue in the name of the assignee has been much extended since. In the latter case (*McKee* agt. *Judd*), it was held that a claim for the unlawful conversion of personal pro-

perty was assignable, so as to enable the plaintiff to sue in his own name. GARDINER, J., says, upon the authority of *The People* agt. *Tioga Common Pleas* (19 *Wend.* 73), the law may be considered as settled that a claim to damage arising from the wrongful conversion of personal property, is a chose in action that is assignable. If the demand was assignable, the action was properly brought in the name of the plaintiff (the assignee); and HAND, J., while dissenting from the decision, concedes : " If the substantial cause of action arises from an act that diminishes or impairs the property of the assignor, it passes to the assignee." *Waldron* agt. *Willard* (17 *N. Y. Rep.* 466), was on the contract of a common carrier to deliver goods, and not for a tort, and is not applicable to this case as an authority.

In *Byxbie* agt. *Wood* (24 *N. Y.* 611), it was *held,* that such a claim was assignable. GOULD, J., says, in speaking of an assignment of a claim for fraud or deceit: " It will be seen to be of that class of torts the right of action for which would survive to the personal representatives of the claimant, and the power to assign and to transmit to personal representatives are convertible propositions." And in *Sherman* agt. *Elder* (24 *N. Y.* 381), ALLEN, J., says : " A right of action for the taking and conversion of personal property is assignable, and the assignee may recover the value of the property in his own name."

It is also objected to the plaintiff's recovery, that the words used in this assignment do not transfer a claim for damages for a prior conversion. The assignment in this case was of the stock, subject to the payment of the amount due, and was followed by the tender of the debt and demand of the property. Under the rule laid down in *Hall* agt. *Robinson* (*supra*), this would be sufficient to charge the defendants with a new conversion, even if there had been a previous conversion of the property.

In *Sherman* agt. *Elder* (*supra*), ALLEN, J., says : " An assignment of the property by name after the conversion,

carries the right of action for the conversion ' *ut res magis valeat quam pereat.*' Courts will give effect to a transaction if possible, and so construe an instrument as to give effect to the intent of the parties." In *Hicks* agt. *Cleveland* (39 *Barb.* 573), a contrary rule was held, but the point of the decision in that case was, that the plaintiff, who had a mere transfer of the goods, could not make it available without a demand. MULLIN, J., says, the plaintiff had not perfected his right by a demand. As a tender of the debt and a demand was made by the assignee in this action after assignment, under any of those cases the assignee could maintain an action.

It is also objected to the plaintiff's recovery, that there can be no recovery in this action, because no equitable right of action is shown in the plaintiff. The theory of the complaint is, that the plaintiff as the assignee of the stock from the debtor, had tendered to the defendants the amount of the debt due, and demanded the pledge; and that he brought this action to redeem the pledge, and for an account of the dividends received on the pledge. This would be sufficient to give a court of equity jurisdiction, and if the court obtained jurisdiction, a judgment might afterwards be rendered for the damages sustained by the plaintiff if the defendants had converted the pledge. It is in proof, however, that the conversion had taken place previously, by an illegal sale of the stock, and the plaintiff therefore fails in obtaining the relief sought for in equity, and the defendants contend that the complaint should therefore be dismissed.

In a court of equity it has rarely, and then only under peculiar circumstances, been thought proper to entertain any jurisdiction in actions of tort (*Yacy* agt. *Downer*, 5 *Litt.* 9). Nor would equity obtain jurisdiction where an adequate remedy can be had by ordinary legal proceedings, nor for the purpose merely of obtaining a compensation in damages. (*Bradley* agt. *Bosley*, 1 *Barb Ch. Rep.* 125 : *Moore*

agt. *Elmendorf*, 11 *Paige*, 277.) Under these decisions it would have been difficult to sustain the jurisdiction of a court of equity prior to the adoption of the present sytem. But under the change which has been made in the union of legal and equitable proceedings, and the decisions of the court of appeals since that period, a more extended jurisdiction in equity has been sanctioned.

In *Marquat* agt. *Marquat* (2 *Kern.* 336), which was an action brought against a man and his wife, to compel them to execute a mortgage to secure a sum of money loaned by the plaintiff to the husband, on an alleged agreement to give such security, the equitable relief was denied, and the court rendered judgment for the plaintiff against the husband for the debt, and judgment of dismissal as to the wife. JOHNSON, J., who delivered the opinion of the court, seems to have put his decision solely on the ground that the complaint showed a good cause of action against the husband, irrespective of those parts which set out any grounds for the equitable relief, and, therefore, the judgment was correct. The distinction between legal and equitable relief is not noticed in the opinion, nor is the distinction between the trial by a court or jury referred to. It is proper, however, to say that in that case, the indebtedness of the husband was admitted in the answer, and no issue was formed as to such indebtedness.

In *Phillips* agt. *Gorham* (17 *N. Y. Rep. p.* 270), the court held that legal and equitable relief might be united and sought in the same complaint, but in that case the objection to the right of trial by a jury did not exist, as the case was tried by a jury. The judge says: "All cases may legally be tried by a jury, so that this creates no insuperable difficulty."

In *Emery* agt. *Pease* (20 *N. Y. p.* 62), the action was for a balance due on an account stated, and upon the trial the judge dismissed the complaint on the ground that no accounting was shown, and held that the plaintiff should

have brought his action for the accounting; that judgment was reviewed, the court holding, that although no accounting had been proved, the facts averred in the complaint showed that the plaintiff was entitled to an account, and that such judgment should have been rendered, although the plaintiff had mistaken his remedy in the complaint. In regard to this case, also, it is proper to add that the case was tried at the circuit, and no objection could be taken that the right of trial by a jury was interfered with.

In *The New York Ice Co.* agt. *The Northwestern Ins. Co.* (23 *N. Y. Rep.* 357), an action was brought to reform a policy of insurance, and for the recovery of the amount of the insurance. The case was tried before the judge as an equity case, and the equitable relief was denied. The judge then held that the questions arising on the policy of insurance which involved a question of fraud should be tried by a jury, and the complaint was dismissed. Judge COMSTOCK in delivering the opinion of the court, says: "The plaintiff should not have been turned out of court on the mere ground that he had not entitled himself to the equitable relief demanded, if there was enough left of his case to entitle him to recover the sum in which he was insured." In this case, however, that can hardly be called a controlling decision, as the appeal was dismissed because the order was not appealable.

In *Barlow* agt. *Scott* (24 *N. Y. Rep.* p. 40), the complaint asked for specific performance or for damages. The equitable relief was denied, and judgment for damages rendered. This case resembles the present one in the fact that the plaintiff is not entitled to the equitable relief asked for, and his only remedy, if any, is for damages. In the last cited case, LOTT, J., says: "It is, however, insisted by the defendant, that it was erroneous for the court to order judgment in favor of the plaintiff on a trial of the issue without a jury. There is nothing to show that the action was so tried against or without the defendant's consent.

The objection does not appear to have been made at the trial, and if it was, should have been stated in the case, and not appearing there, it cannot be urged in this court as a ground for reversing the judgment." No intimation is given as to what would be proper if the objection had been taken at the trial. And in *The N. Y. and N. H. R. R. Co.* agt. *Schuyler et al.*, in court of appeals, December, 1865, it was held that wherever the facts justified a resort to a court of equity, such court would fully dispose of all the rights springing out of the same transactions, and would have jurisdiction of every question, whether legal or equitable, considered within its scope.

These are all the cases in our courts that I have been able to find, in which the question now under consideration has been reviewed. They leave the particular question which arises in this case undecided, and the decision in the last case of *Barlow* agt. *Scott*, although it does not express any direct opinion, does intimate that if the objection had been taken on the trial that the case was one proper to be tried by a jury, it would have been worthy of consideration. I have always doubted as to the power of the court to take from a jury the consideration and decision of actions to recover damages because the plaintiff has seen fit to set up in his complaint, in addition thereto, a claim for equitable relief, in which he fails.

If such a rule is sanctioned, it is only necessary for a plaintiff to connect with the claim for damages, which the parties have a right to ask should be tried by a jury, a fictitious claim in equity, and thereby secure to the party his own choice as to a mode of trial, although different from that which is provided by the constitution. In this case the plaintiff has united with his claim for damages a cause of action for the redemption of a pledge, although he knew at the time the pledge had long prior thereto been sold, and an account rendered to the pledgee. He had, therefore, in reality, no equitable cause of action; and if

I now reserved the right to try the case and award damages for the improper sale of the pledge, it would deprive the defendants of the right which they have to submit their acts in this matter to a jury instead of a single judge. The objection is taken by them now on the trial, and the case is brought within the views as expressed by the court in *Barlow* agt. *Scott* (*supra*).

I am somewhat at a loss to decide what course is proper under the circumstances to be adopted in the disposition of this case. If the complaint was dismissed the plaintiff would be remediless, because the statute of limitations would be a bar to a new action. The assessment of damages by me here, after the objection taken by the defendants, would place it within the case as stated in *Barlow* agt. *Scott*, and might be erroneous.

It was not an unusual practice in the court of chancery for that court to send a case for trial by a jury in matters involving the assessment of damages, where it appeared to be more appropriate for a jury to pass upon such questions, even in cases where the facts were such as were sufficient to give a court of equity jurisdiction, and on the finding of a jury on such facts, to render the proper judgment. These remarks may be applied with much more force where the cause of action rests more in tort than in contract. But even supposing that the claim in this case could be enforced as one of contract, there is no ground for assuming equitable jurisdiction in giving the plaintiff the remedy to which he may be entitled.

Under the old system, a court of chancery did not retain jurisdiction merely for the sake of assessing damages, and where no case was made out for equitable relief, the court would dismiss the bill, and turn the party over to his legal remedies (*Strickland* agt. *Strickland*, 6 *Beavan*, 77; *Fisher* agt. *Carroll*, 1 *Jones*, [*N. C.*] 27); and where the defendant had disabled himself before the filing of the bill, and the plaintiff knew that fact before he commenced his suit, it is

thus reduced to the case of a bill filed for the sole purpose
of assessing damages for a breach of contract, which is a
matter strictly of legal and not equitable jurisdiction
(*Denton* agt. *Stewart*, 1 *Cox*, 258), and it was doubtful
whether the court had jurisdiction to assess damages
merely, in a case where the plaintiff was aware before he
filed his bill, that the contract (or duty) could not be spe-
cifically performed (4 *J. Ch. Rep.* 559), and as was said by
the chancellor : " When the remedy is clear and perfect
at law by an action, *if the court is to sustain such a bill*,
I do not see why it might not equally sustain one in every
other case sounding in damages and cognizable at law."
(*Kempshall* agt. *Stone*, 5 *Johns. Ch. Rep.* 193 ; *Morss* agt.
*Elmendorf*, 11 *Paige*, 277.) Since the union of legal and
equitable jurisdiction in the same court, it has ceased to
be necessary to dismiss the complaint for such a cause.
The court may, when it finds the cause has been improperly
treated as an equity case, deny such relief, and direct the
case as an action at law before a jury.

In this case, as I have before stated, there is no ground
for the equitable relief asked for in the complaint. The
pledge had been sold long before the assignment ; such
sale was known to the assignor. The same fact was known
to the assignee before suit, even supposing he did not
know it before he was told of it through his agent, who
demanded the stock on tender of the money. It is very
clear, therefore, he had no good ground on which to com-
mence an action for the redemption of the pledge. Nothing
remained but an action for the tort in improperly disposing
of the pledge, for which an ample remedy existed at law.
The better course, therefore, will be to order the trial of
the cause by a jury. For this purpose I have examined
more fully the questions as to the sale of the pledge,
because if it were clear the plaintiff could not recover,
the complaint might be dismissed. As, however, I have
come to a contrary conclusion. and as the statute of limi-

tations would be a bar to a new action, there is no propriety in dismissing the complaint.

This is in consonance with *Greason* agt. *Keteltas* (17 *N. Y. Rep.* 491). SELDEN, J., in that case was of opinion that there was no ground of equity jurisdiction, and that any decision of the court denying a right to trial by jury would be plainly erroneous. The jurisdiction in that case was only sustained upon the ground that the party waived his objection to that mode of trial. This disposition of the case will render it unnecessary for me to examine as to the proper rule of damages, or the amount which the plaintiff might recover. That can be left until the trial of the case before the jury.

My conclusion is, that the plaintiff has not made out any case entitling him to equitable relief, and that the cause must be ordered to the circuit for trial as to the claim for damages for the illegal disposition of the stock in question.