## MARKHAM *vs.* JAUDON *et al.*

Where a person employs brokers to purchase stocks for him, upon an agreement that he shall keep a margin of ten per cent upon the par value above market rate, of the shares, in the hands of the brokers, and he fails to do so, whereupon the brokers notify him of a fall in the market price of the shares, and that they require him to furnish more money, to make his margin good, they may, upon his neglecting to comply, sell the stock, at the stock exchange, without further notice to the owner. (WELLES, J. dissented.)

There is, under these circumstances, a clear breach of the principal's contract, which justifies the brokers in selling ; and the notice of the time and place of sale, required in the case of a sale of pledged stock, need not be given.

The defendants having testified to an express agreement that the stock purchased by them might be sold, if the margin was not kept good, without any notice of the time or place of sale ; *Held* that it was error for the judge to charge the jury that such an agreement was wholly improbable.

THIS is an action against the defendants for wrongfully and unlawfully selling 100 shares of Erie Railroad stock, and 200 shares of Cleveland and Pittsburgh Railroad stock.

Markham *v.* Jaudon.

The plaintiff had deposited upwards of $1900 as security with the defendants, and they advanced this money and bought these stocks for him. This purchase was made April 26th, 1865. On the 27th of May the market price of the stocks had fallen. The defendants wrote to the plaintiff and notified him to furnish more security or margin. There was no attempt to prove any notice of a time or place of sale if the security or margin was not furnished. On the 30th of May, without any further notice, the stocks were sold. The result was a large loss, which absorbed the margin and brought the plaintiff in debt. The complaint is for the conversion of the stocks. The answer alleges that the agreement between the parties was that the plaintiff should keep a margin of ten per cent above the market price of the stock, and if he failed to do this, the defendants could sell, according to the custom of brokers. At the trial, before a justice of this court and a jury, the defendants swore that there was an express agreement made by the plaintiff that they might sell his stock and confiscate his security or margin, if the price of the stock fell so that there was not ten per cent, without notice or demand of additional security, and without notice of time and place of sale. The plaintiff denied any such contract, and any waiver of his rights by law in the relation in which he stood to the defendants.

The defendants offered to ask the plaintiff if he knew of the existence of a custom between brokers and their customers by which the broker has the right to sell out the customer's stock on the exhaustion of the margin? This evidence was excluded.

The jury found a verdict for the plaintiff for $4850, and judgment having been entered thereon, the defendants appealed therefrom, and from an order denying the defendants' motion for a new trial.

*Henry B. Barnett*, for the appellant.

*James Emott*, for the respondent.

LEONARD, P. J.    The judge held at the circuit, substantially, that the relation of debtor and creditor existed between the broker and his customer, and also that of pledgor and pledgee, when a stock broker purchases shares for his customer, upon a margin furnished by him, and agrees to hold or carry the shares so purchased, in case a margin of ten per cent is kept good. The judge also held that the broker could not sell the shares so purchased without notice of the time and place of sale, upon a failure of the customer, or purchaser, to comply with his contract in keeping his margin good.

The evidence as to some portions of the contract between the plaintiff and the defendants was contradictory, but there was no dispute that the plaintiff was to keep a margin of ten per cent upon the par value above the market rate of the shares in the hands of the defendants ; that he failed to do so ; that the defendants duly notified him of the fall in the market price of the shares, and that they required him to furnish more money to make his margin good, and that the plaintiff having neglected to do so, the defendants sold out the shares at the stock exchange without further notice to the plaintiff.

There was a clear breach of his contract on the part of the plaintiff ; and unless the obligation imposed by law upon a pledgee to notify the pledgor of the time and place of the sale of the thing pledged, devolves upon the defendants, under such circumstances, upon such a contract, they had the right to sell the shares in the manner they did, and the plaintiff has no cause of action.

The effect of the contract is that the broker, upon the performance of certain conditions by the customer, will buy and hold a certain number of shares, and in case any advance accrues and is secured by a sale made under the direction or authority of the customer, he shall enjoy the benefit of it, and in case a loss ensues, the broker having performed the contract on his part, the customer shall bear it. It does not

appear that, in the present case, the shares were to be carried for any certain or named period of time. The plaintiff, no doubt, could have terminated the transaction at any time, even in case no agreement as to time existed, by directing a sale of the shares, or ·by paying the cost, with interest and commissions. The defendants could not do so when there was no stipulation as to time, except, perhaps, on sufficient notice to the customer, while his margin was good, or upon failure to keep the agreed margin fully supplied.

The broker lends no money to his customer, and gets no security from him, except as against the contingent liability which may arise from a fall in the market price of the shares. The shares purchased are the primary source for the payment of the money advanced by the broker, in case the customer does not desire to pay for them and take them into his own possession, or neglects to perform the agreement with his broker. The " margin" is the security against loss on the part of the agent. The margin, instead of being paid in money, may be secured by a pledge of property, and such security would then be subject to the rules of law governing pledges.

Suppose the broker purchased 100 shares on the order of his customer for cash, but upon being called upon after the purchase of the shares the customer should neglect or be unable to pay for them. There could be no pretense of the existence of a pledge, or that the broker must give notice of the time or place of the sale of the shares so purchased. The broker might realize his money by an immediate sale for the account of the principal on the most summary notice of his intention to do so, or even without any notice. This course is justified by the breach of the implied promise of the purchaser to pay cash as soon as the purchase should be made. The principal would be liable for the loss, if any arose ; or, if any profit accrued, he would be entitled to receive it ; the broker having trusted him in making the transaction, without

the cash in hand. It can make no difference in the relation or liability of the parties, if the broker should hold the shares, and forbear for a time to close out the transaction by a sale. The broker does not become a pledgee and his customer a pledgor of the shares, in consequence of the postponement. Nor am I able to perceive that the relation or liability of the parties would be varied in this respect, if the postponement should take place under an agreement between the broker and his customer for that purpose, as in the present case. In either case, the right to sell arises from a breach of the customer's contract; in the one case for failing to supply the margin agreed on, and in the other from the non-payment of the price. The nature of the transaction also requires, in many instances, the right to make a prompt sale to prevent loss.

Under a contract like the one proven, the customer does not become the owner of the shares upon their purchase by the broker. He may become the owner if he pays for them; but under the contract his interest exists only in the margin, which, by the enhanced market value of the shares, may be largely increased, or by a decline may be wholly extinguished and a further loss ensue. The transaction bears more resemblance to a conditional sale of property, which will belong to the purchaser on the fulfillment of his contract, but upon his breach, he will lose not only his right to obtain the property, but also such sum as he has paid—depending, in this particular, upon the terms of the contract.

I concur entirely with the observations of Judge INGRAHAM, in the case of *Hanks* v. *Drake*, (*ante, p.* 186,) wherein, upon a similar state of facts, he remarks : " Under such an agreement the defendants had a right, upon the plaintiffs failing to deposit a further margin when required so to do, to sell the stock and close the transaction. This right to sell arises from the previous violation of the contract on the part of the person for whom the stock was purchased, and who, by neglecting to perform on his part, terminated the obligation of

Markham *v.* Jaudon.

the defendants to hold the stock any longer, and left them at liberty to sell the stock for their own protection. The notice which the law requires in the case of a sale of a pledge of stock as security for the payment of a sum of money advanced thereon is not required in such a case." This must be the law of our general term, until overruled by higher authority.

I do not say that the notice in this case was sufficient, or otherwise. That question was wholly disregarded by the judge at the trial. He was asked to charge "that the plaintiff was at the risk to inform himself of the state of the market." The judge said, "he was bound to inform himself of the state of the market; no doubt about that; and it was his duty to keep this margin good ; but the moment he failed as pledgor, he had a right to notice before he could be sold out, unless there was an express agreement."

He was afterwards asked to call the attention of the jury to the fact of the plaintiff having an office. The judge replied "there is no pretense of any notice of the time and place of the sale of the stock." Counsel then inquired : "Does your honor hold that to be necessary ?" and the judge replied, "I have so held." Thus the verdict was called for by the charge, as if it turned wholly upon the notice required in the case of a pledge.

The jury were misled by this position, and no fact in dispute was before them for consideration, although a lengthy charge had been delivered. They might as well have been instructed to find for the plaintiff ; for there was no evidence of any notice of the time or place of the sale, and the case was made to turn upon the omission.

There is also another branch of this case deserving of attention.

The appeal is from an order refusing a new trial upon the merits, as well as upon the law arising upon exceptions. The defendants testified to an express agreement that the stock purchased by them might be sold if the margin was not kept good, without any notice of the time or place of sale, or any

notice of any kind.   The judge argued to the jury in strong terms that such an agreement was wholly improbable, while to those who are acquainted with the transactions customary among stock brokers in the city of New York, it is pretty well understood that any argument drawn from the improbability of the existence of such an agreement would be wholly unfounded.

The defendants sustained, in my opinion, an injury before the jury by the unauthorized expression of the personal views of the judge.

On both grounds there should be a new trial, with costs to abide the event.

CLERKE, J. concurred.

WELLES, J. (dissenting.)   The relation which these parties sustained to each other was two-fold.   First, that of principal and agent in respect to purchasing the stocks in question, by the defendants for the plaintiff; and, second, that of pledgor and pledgee in reference to the right and power of the defendants to keep and hold the stocks after they were so purchased, as security for their advances in making the purchases, and of disposing of them in any event. In regard to the first, there appears to be little or no dispute. Brokerage is a species of agency, and is so treated in all the elementary books on the subject.

In the purchase of stocks by a broker, for his principal, where the former advances the whole or any part of the purchase price, he may hold the stocks as security for the repayment of such advances.

In consequence of the fluctuations in the market value of nearly every kind of stock, it is usual for the parties to agree, where the broker is to carry the stock for any time, that the principal, or person on whose account the purchase is to be made, shall place in the hands of his broker or agent, a sum of money or its equivalent, which, in the dialect of stock brokers,

is called a *margin,* as a further security to the latter against losses to which he may be exposed by reason of subsequent depression in the market value of the stocks to be purchased.

The stocks in question were one hundred shares of the Erie Railway Company, and two hundred shares of the Cleveland and Pittsburgh Railroad Company. These stocks were purchased on or about the 26th day of April, 1865, by the defendants, at the request and for the account of the plaintiff, at an aggregate cost of about $16,200, the defendants having in their hands at the same time a margin of between 19 and 20 hundred dollars. Evidence was given by the plaintiff tending to show that the defendants agreed to hold these stocks until the plaintiff should direct them to be sold. The defendants gave evidence tending to prove that it was agreed by the plaintiff to keep the margin of 10 per cent good, and that in case it was not kept good, the defendants were to be at liberty to sell the stocks without notifying the plaintiff, and without giving notice of the time or place of sale ; and the plaintiff gave evidence contradicting such alleged agreement of the plaintiff. The justice before whom the action was tried, held, and so charged the jury, that if they believed that the plaintiff so agreed as alleged by the defendants, the plaintiff could not recover, and submitted the question fairly to the jury.

It appeared that on the 30th of May, 1865, the defendants sold the 100 shares of Erie stock, and on the 7th July of the same year they sold the 200 shares of Cleveland and Pittsburgh stock, for the aggregate amount of $14,062.50 ; that at the times of such sales the market value of these stocks had become so depressed that the whole of the margin in the plaintiff's hands had become exhausted.

It also appeared that in the latter part of July the plaintiff directed the defendants to sell the 100 shares of Erie stock, and as the plaintiff testified, the defendants then for the first time told him the whole of the stocks (Cleveland and Pittsburgh, and Erie) had been sold, and that that was

the first time the plaintiff had notice or knowledge of the sales, or of any intention on the part of the defendants to sell. There was no attempt to show that any notice of the time and place of the sale was ever given to any person, in any way. The sales were made at auction, at the board of stock brokers. Afterwards there was a large advance in the market value of both of these kinds of stocks.

The doctrine of the judge's charge to the jury was that the transaction was a pledge of the stocks to secure the repayment of the money advanced by the defendants, &c. ; that the duty of the defendants was to · give notice to the plaintiff that his margin was diminished or exhausted, and require him to make it good ; and that before he could legally sell on the plaintiff's default, &c. he must give reasonable notice of the time and place of sale.

·  In the case of *Hanks* v. *Drake and others,* recently decided by the general term of this district, (*ante, p.* 186,) Judge INGRAHAM holds that, in a case like the present, the transaction is not a pledge of stocks, but an agency by the broker to purchase for another and hold the stock as security that the margin shall be kept good and the advance be repaid ; and that in case the owner of the stock was in default, the broker might sell without previous notice of the time and place of sale. The case, however, did not necessarily, nor indeed at all, depend upon that question, but seems have been decided on the ground that there had been a clear ratification of the sale of the stock, which was claimed to be illegal for want of notice. The learned justice refers to the cases of *Genet* v. *Howland,* (45 *Barb.* 560,) and *Milliken* v. *Dehon,* (27 *N. Y. Rep.* 364,) in both of which cases the parties agreed that in case of failure, &c. a sale might be made without notice.

In the present case it cannot be doubted that the stocks in question were in the hands of the defendants as security for money advanced ; nor that the legal title was at the same time in the plaintiff. Must not their relations have been

Markham *v.* Jaudon.

either that of pledgor and pledgee, or of mortgagor and mortgagee? It could not be the latter, for the reason that the title was in the plaintiff, and so continued from the time they were purchased by the defendants. A mortgage of personal property conveys the title, subject to be defeated by payment, or other performance of the condition. A sale is never necessary to perfect the legal title under a mortgage after condition broken. It is only of service to foreclose a supposed equity of redemption. It is a dead pledge, as its name imports. In case of a simple pledge there is no title in the pledgee, but the same continues in the pledgor until after a sale for condition broken; and such sale must be on reasonable notice of time and place, unless otherwise provided in the contract of bailment. I confess I am unable to see in the transaction, so far as it relates to the terms and conditions upon which the defendants held the stocks, any thing but a mere simple pledge. (*Wheeler* v. *Newbould*, 16 *N. Y. Rep.* 392. *Dykers* v. *Allen*, 7 *Hill*, 497. *Brass* v. *Worth*, 40 *Barb.* 648.)

The evidence on the part of the defendants, tending to show what was the contract, was flatly contradicted by that given by the plaintiff, and the question was submitted to the jury, with proper instructions, and the verdict settles the question in favor of the plaintiff—that the contract was as he claims it to have been.

The offer of evidence, by the defendants, of the existence of a usage, was properly excluded. The law settled the rights of the parties, which could not be varied essentially by a usage by which the plaintiff never agreed to be bound.

In my opinion the judgment and order appealed from should be affirmed, with costs.

New trial granted.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Welles*, Justices.]